# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR11-0069 |
| vs. | ORDER FOR PRETRIAL DETENTION |
| JUSTIN MICHAEL RAY, | |
| Defendant. | |

_____

On the 30th day of March, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Rebecca Goodgame Ebinger. The Defendant appeared personally and was represented by his attorney, John J. Bishop.

## RELEVANT FACTS

On March 24, 2011, Defendant Justin Michael Ray was charged by Indictment (docket number 2) with bank fraud (Count 1), money laundering (Count 2), and engaging in monetary transactions using funds from specified unlawful activity (Count 3). Defendant entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on May 23, 2011.

FBI Agent William Langdon testified regarding the circumstances underlying the instant charge. In late 2005 and early 2006, Defendant owned a house in Robins, Iowa, which he listed for sale at $679,000. When Defendant was unable to sell the house, he entered into a sham transaction with his father for the purchase of the house at $711,000. Defendant and his father allegedly had an agreement, whereby Defendant's father would buy the house, but would allow Defendant to remain living in it. Defendant agreed to help his father obtain financing, and make the mortgage payments for his father.

Defendant's father obtained financing from Sun Trust Bank. With the proceeds from the purchase price, Defendant paid off his outstanding mortgage on the house, and received approximately $200,000 in cash. Defendant continued to live in the house after the purported sale to his father. Eventually, Defendant moved out of the house after his new house was finished being built. Upon moving out of the house, Defendant stopped paying the mortgage for his father, and the house went into foreclosure.

Defendant's father has pleaded guilty in federal court for the scheme to purchase Defendant's house. In a recorded conversation with his father, Defendant told his father that if law enforcement came after him, he would kill himself or flee from the area. Defendant also talked about changing his identity.

According to the pretrial services report, Defendant is 34 years old. He was born and raised in Cedar Rapids, Iowa. Defendant is separated from his wife of seven years. They have three children together. The children reside in Cedar Rapids with their mother.

Prior to his arrest, Defendant was employed as a "senior closer" for Rockwell Management Services, a debt collection agency in Cedar Rapids. He held this job for about six weeks. In 2010 and 2011, Defendant was employed for about seven months by Ross Marketing in Cedar Rapids. In 2008 and 2009, he worked at Family Auto Sales in Marion, Iowa.

Defendant is in good physical health. However, he is currently being treated with medication for anxiety and depression. Defendant has a significant alcohol abuse problem. He reported consuming alcohol heavily as a teenager, but told the pretrial services officer that he stopped using alcohol between 2000 and 2009. Defendant admitted that he consumed alcohol to the point of intoxication on a daily basis in 2009 and 2010. Defendant stated that he used marijuana in the past on an experimental basis, with his last use about 5 years ago.

At age 18, Defendant was charged and later convicted on six separate occasions of fifth degree criminal mischief, operating a motor vehicle while intoxicated ("OWI") – first offense, underage possession of alcohol, consumption/intoxication, and twice driving with

a denied or revoked license. Defendant initially failed to appear for his arraignment on the OWI charge. At age 21, Defendant was charged and later convicted of public urination. He twice failed to appear for his initial appearance on the charge.

On May 24, 1999, Defendant was charged with OWI – second offense, and driving while barred. On August 10, 1999, while on pretrial release for the OWI and driving while barred charges, Defendant was charged and later convicted of third degree theft. On December 4, 1999, while on pretrial release for the May 1999 OWI and driving while barred charges, and while the third degree theft charge was pending, Defendant was again charged with OWI – second offense, and driving while barred.[1] On December 15, 1999, Defendant was sentenced to 7 days in jail on the first OWI charge, and 5 days in jail on the driving while barred charge. On February 3, 2000, Defendant failed to appear for his arraignment on the second OWI and driving while barred charges. On June 19, 2000, Defendant was sentenced to 60 days in jail and 2 years probation on the OWI charge, and 10 days in jail on the driving while barred charge. On December 3, 2001, Defendant's probation was revoked, and he was sentenced to 50 days in jail. On September 30, 2001, while on probation in the December 1999 OWI charge, Defendant was again charged and later convicted of driving while barred.

On April 24, 2009, Defendant was charged and later convicted of OWI, third offense.[2] Defendant was sentenced to 5 years in prison with all but 30 days suspended, and 3 years probation. On May 16, 2010, while on probation for his 2009 OWI charge, Defendant was charged and later convicted of fifth degree theft. On June 25, 2010, while on probation for his 2009 OWI charge, and while on pretrial release in the fifth degree

---

[1] Even though Defendant was charged with OWI, second offense, it was his third lifetime OWI offense.

[2] Even though Defendant was charged with OWI, third offense, it was his fourth lifetime OWI offense.

theft charge, Defendant was charged and later convicted of third degree harassment.[3] On August 12, 2010, Defendant's probation was modified to require that he reside at the Larry A. Nelson Center.[4] Defendant was still living at the half-way house when he was arrested in this case.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where

---

[3] The harassment charge stems from Defendant's threat to slit his sister-in-law's throat while speaking to her on a cell phone.

[4] In addition to the new law violations, the alleged probation violations included consuming alcohol while on probation, manipulating the VICAP machine, not following through with substance abuse treatment, possessing alcohol and tobacco, and driving without a license.

a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). Here, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with bank fraud, money laundering, and engaging in monetary transactions using funds from specified unlawful activity. Due to the summary nature of Agent Langdon's testimony regarding

Defendant's alleged bank fraud scheme, it is difficult for the Court to weigh the evidence. However, it appears that there is substantial evidence to support the allegations. Defendant has a serious alcohol problem. In 2009, he was convicted of OWI for a fourth time. While on probation for the 2009 OWI conviction, Defendant committed new criminal offenses, consumed alcohol, manipulated his VICAP machine, drove without a license, and failed to follow through on substance abuse treatment. As a result of these probation violations, Defendant was placed in a half-way house in October 2010. While in the half-way house, Defendant continued to consume alcohol and failed to attend counseling sessions. As a consequence, his stay at the half-way house was extended.

The Court believes that when he is drinking, Defendant poses a danger to the community and himself. Additionally, in a recording between Defendant and his father, Defendant made statements about fleeing the district and harming himself. Defendant also has a history of failing to appear at court proceedings, and committing offenses while on probation and pretrial release. Considering all the facts and circumstances, the Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release. Therefore, Defendant will be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1.     The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.     The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.     On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.     The time from the Government's oral motion to detain (March 25, 2011) to the filing of this Ruling (March 31, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act.     18 U.S.C. § 3161(h)(1)(D).

DATED this 31st day of March, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA